UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Alpha Medical, LLC, | ) |
| | ) No. 15 C 4416 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Thomas M. Durkin |
| | ) |
| Roche Diagnostics Corporation, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Alpha Medical, LLC ("Alpha") brings this suit against Roche Diagnostics Corporation ("Roche" or "RD"), seeking relief under various contract, tort, and state law theories for damages arising from the allegedly improper installation and service of laboratory equipment furnished by Roche. Roche moves to dismiss the Complaint in its entirety, arguing that (1) the remedies Alpha seeks are barred by contract; (2) each of the nine counts advanced fails to state a claim upon which relief can be granted; and (3) this Court lacks subject matter jurisdiction. For the reasons set forth below, Roche's motion is granted.

**Background**

The facts set forth in Alpha's complaint are taken as true for the purposes of this motion, with all reasonable inferences construed in Alpha's favor. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

On June 25, 2008, Alpha[1] and Roche entered into a "Master Agreement."[2] R. 11-2 at 7. The Master Agreement sets forth "the terms and conditions under which [Alpha] agrees to use or purchase, as applicable, the Equipment, Reagents, and/or Service [provided by Roche]." *Id.* at 1. It applies to all "schedule(s)" detailing the particulars of the equipment, reagents, or services to be provided. *Id.*[3]

The Master Agreement contains two limited warranties—one warranty applicable to equipment and reagents and another specific to services—each warranting products or services "free of defect" and expressly disclaiming all other warranties, express or implied, including the implied warranty of merchantability and all implied warranties of fitness for a particular purpose. *Id.* ¶¶ A5, F7. The agreement limits Alpha's recovery for breach of these warranties to the replacement

---

[1] Though Alpha operated under a different name at the time the Master Agreement was executed, both parties agree that Alpha is properly party to the contract. R. 11 at 2 fn. 1; R. 17 at 2.

[2] As a general rule, on a motion to dismiss, the court may consider only the plaintiff's complaint. However, Rule 10(c) provides that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). It is also well-settled in this circuit that "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *88 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). This exception is "aimed at cases interpreting, for example, a contract." *Id.* The purpose of the exception is to prevent parties from surviving a motion to dismiss by failing to attach relevant documents. *Id.*

[3] The Master Agreement is appended to Defendant's Motion to Dismiss, R. 11, and is referenced throughout Plaintiff's Response, R. 17. It incorporates by reference the "Product Schedule" attached as Exhibit A to the Complaint. The terms of the Master Agreement, detailing the parties' respective rights and obligations, are essential to Alpha's claims. The Master Agreement is the "parent" document to which the Product Schedule belongs. Accordingly, the Master Agreement will be considered in deciding this motion to dismiss.

and repair of defective parts and the re-performance of defective services; it expressly disclaims Roche's liability for incidental and consequential damages. *Id.* The Master Agreement also contains default and remedies provisions: in the event that Roche fails to perform any of its obligations under the Master Agreement within 15 calendar days of written notice of non-performance, Alpha may cancel or terminate any schedule under which Roche is in default and recover the costs, including attorney's fees, of enforcing its rights. *Id.* ¶¶ A6-A7. Finally, the Master Agreement is governed by Indiana Law. *Id.* ¶ A13.

In 2014, Alpha decided to expand its business to perform "laboratory diagnostics" for nursing homes. R. 1 ¶¶ 8, 97; R. 17 at 2. At Alpha's request, a team from Roche came to Alpha's headquarters to evaluate Alpha's laboratory and determine which medical equipment was best suited to its business objectives. R. 1 ¶¶ 8-9; R. 17 at 2. Following this consultation, Roche recommended the "cobas 6000 analyzer series" and a variety of specially formulated reagents for biochemical laboratory analysis. R. 1 ¶¶ 9, 15; R. 17 at 2.

On October 16, 2014, the parties executed a "Product Schedule" for the cobas 6000 analyzer and a collection of reagents. R. 22-1. The schedule, incorporated by reference in the Master Agreement, provides for the fully discounted lease of the cobas 6000 in exchange for Alpha's commitment to minimum annual reagent purchases totaling $199,454.52 per year for a period of seven years. *Id.* It also sets forth the scope and price of a services plan and a two-year services warranty, details various ancillary allowances/discounts, and permits Alpha's use of certain "open

3

channels" on the cobas 6000 for development purposes. Alpha does not allege that it made any payments pursuant to the Product Schedule.

On December 15, 2014, Roche installed the cobas 6000 in Alpha's laboratory. R. 1 at ¶ 21. At Roche's insistence, the machine was installed next to a then-functional water pipe. *Id.* at ¶¶ 10, 22. It was also installed in a location with insufficient space for its proper operation. *Id.* at ¶¶ 10-11, 55, 74.

Roche performed testing on the cobas 6000 from December 18, 2014 to December 23, 2014 to determine whether it was operational. *Id.* at ¶ 23. On the first day of testing, Roche determined that "there was a problem with the water supply at Alpha" and that "the cobas 6000['s] voltage was not compatible with Alpha's lab voltage." *Id.* at ¶¶ 24-25. On December 21, 2015, the cobas 6000 was sprayed by water leaking from the nearby pipe.[4] *Id.* at ¶ 26. On December 23, 2014, Roche determined that the machine had been damaged by the water and that the system had begun to corrode. *Id.* at ¶ 27. According to Alpha, independent sources estimate the cost of necessary repairs to be between $37,000 and $58,000. *Id.* at ¶ 30.

The relationship between the parties broke down soon thereafter. Despite repeated requests by Alpha, Roche refused to complete its diagnostic assessment of the cobas 6000, to repair it, or to remove it (or the reagents) from the premises so that other equipment could be installed in its place. *Id.* at ¶¶ 28-29, 31-35. The

---

[4] It is unclear from the Complaint whether Alpha alleges that the pipe was damaged by Roche during the installation or testing of the cobas 6000, or that the strain the machine placed on the water supply caused the pipe to spring a leak. In either case, for the purpose of deciding this motion, the Court accepts that some aspect of the installation, testing, or operation of the cobas 6000 resulted in a leaky pipe that damaged the machine.

4

equipment is not, and has never been, operational. *Id.* at ¶¶ 30, 36, 89. Because it lacks a functioning analyzer, Alpha has been unable to service nursing homes' diagnostic testing needs as planned. *Id.* at ¶¶ 97-98.

On April 20, 2015, Alpha sent Roche "a notice of termination of contract and breach of contract." *Id.* at ¶ 32. On May 19, 2015, Alpha brought this suit seeking actual and consequential damages, fees, costs, and, in all but its first claim, punitive damages and unspecified equitable relief. *Id.* at 5-13.

**Discussion**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. Jurisdiction exists if the parties are diverse and the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C. § 1332(a). In its Complaint, Alpha pleads diversity and that damages exceed $75,000. R. 1 at ¶ 4. Roche disputes the value of the suit, however, and argues that Alpha has not, and *cannot*, plead damages in excess of the jurisdictional threshold. R. 11 at 14; R. 20 at 9-10.

Courts "generally will accept the plaintiff's good faith allegation of the amount in controversy unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *McMillan v. Sheraton Chic. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (internal brackets and quotation marks omitted). However, where the defendant challenges the amount in controversy, the plaintiff must support its assertion of damages with "competent proof," carrying its burden by a "preponderance of the evidence." *Id.* General assertions of damages,

5

unsupported by any facts or evidence of specific injury, will not suffice. *Id*. Moreover, "[a] demand is legally impossible for jurisdictional purposes when it runs up against a statutory or contractual cap on damages." *Johnson v. Wattenbarger*, 361 F.3d 991, 994 (7th Cir. 2004).

## A. Lack of Competent Proof

Alpha has failed to set forth *any* proof, much less competent proof of damages in excess of the jurisdictional floor. Indeed, the only specific references to monetary damages in the Complaint are the formulaic statement of jurisdiction, quoted above, and a single reference to independent estimates Alpha obtained for the repair of the cobas 6000, valued between $37,000 and $58,000. R. 1 ¶ 30.

In response to Roche's challenge to the amount in controversy, Alpha's efforts are similarly lacking.[5] Alpha does not submit a single example of any specific harm it suffered, economic or otherwise—no receipts, invoices, canceled checks, or other evidence of, for example, expenses incurred in attempting to enforce its rights under the Product Schedule.

Curiously, the only support Alpha advances in support of its position is the fair market value of the cobas 6000. R. 17 at 11. By the plain terms of the Product Schedule, however, Alpha contracted to lease the cobas 6000 at "No Additional

---

[5] In its response to Roche's jurisdiction argument, Alpha suggests that if Roche contests the amount in controversy, "then they should file a removal petition." R. 17 at 11. No such procedure exists. It is not a defendant's responsibility to select an appropriate forum for a plaintiff's lawsuit. As the party invoking the jurisdiction of the court, it is the plaintiff who bears the burden of establishing that jurisdiction is proper. If after evaluating its damages in light of this Opinion and Order Alpha determines that its damages are not, in fact, in excess of $75,000, Alpha may select a more appropriate court to preside over its claims. Nothing in this Order is intended to prevent Alpha from refiling its complaint in state court.

6

Charge" in exchange for its commitment to minimum reagent purchases. R. 22-1 at 1. The cost of equipment Alpha did not purchase or even make lease payments on cannot form the basis of the jurisdictional amount in controversy requirement.

Alpha does assert general categories of financial damages to which it apparently believes it is entitled, including actual damages, lost business costs, attorneys' fees, and punitive damages.[6] R. 1 at Counts I-IX. Such conclusory allegations of loss, unsupported by competent proof, are insufficient. *See McMillan*, 567 F.3d at 845 (remanding for dismissal where the amount in controversy was contested and plaintiffs failed to come forward with any competent proof of injury).

### B. Contractual Limitation on Remedies

Even if Alpha had carried its burden with respect to these alleged damages, however, it nevertheless encounters a second problem: the express limitation on remedies set forth in the Master Agreement. Roche argues that the limited warranty provisions in the Master Agreement (1) restrict Alpha's recovery to the replacement or repair of any defective part and the re-performance of any defective service, and (2) preclude recovery of the actual and consequential damages Alpha seeks. The Court agrees.

---

[6] Alpha offers no legal basis for requesting punitive damages and the Court is skeptical that any such basis exists. *See, e.g., Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) (holding that absent proof of a separate and independent tort for which punitive damages are allowed, punitive damages are unavailable in a breach of contract case). The Court therefore does not consider this unsupported category of damages in determining whether the jurisdictional threshold has been met. *See Lewis v. Weiss*, 631 F. Supp. 2d 1063, 1067 (N.D. Ill. 2009) (refusing to consider a categorical claim for punitive damages in determining whether the amount in controversy met the jurisdictional threshold).

7

Alpha does not dispute that the Master Agreement contains limited warranties that restrict collectable damages. Instead, Alpha argues that it is not bound by the terms of the Master Agreement because it never accepted the cobas 6000 as installed and because Roche never completed its "installation activities." R. 17 at 2-4. Alpha's argument mistakes perfect performance of the contract with its enforceability, and is erroneous.

Paragraph A1 of the Master Agreement provides:

This Agreement becomes effective and the terms and conditions contained herein will apply to every transaction customer enters into with RD *after Customer has signed it and RD has accepted it*. Thereafter, each Schedule hereto will become effective *after Customer has signed and RD has accepted that particular Schedule.*

R. 11-2 ¶ A1 (emphasis added). Alpha does not contest that both the Master Agreement and the Product Schedule were duly signed and accepted. *See* R. 11-2 at 7; R 22-1 at 3. Accordingly, both are effective and enforceable, imperfect performance thereunder notwithstanding.

Of course, managing defects in performance is precisely the purpose of the Master Agreement. Anticipating conflicts like the one that has arisen here, the Master Agreement details Alpha's remedies for defective products or services and acts constituting default—including limitations on those remedies. Indiana law permits this. *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 643 (Ind. Ct. App. 2004) ("Indiana Code Section 26–1–2–719(1)(a) allows contracting parties to modify or limit the damages recoverable in a contract dispute, i.e., by limiting the buyer's remedies to . . . repair and replacement of nonconforming goods or parts"); Ind. Code

8

Ann. § 26-1-2-719, cmt. 3 (recognizing the validity of clauses limiting or excluding consequential damages); *see also* Ind. Code Ann. § 26-1-2-316, cmts. 1-2.

Alpha does not argue that the limited warranties are ineffective. On their face, they plainly comply with Indiana law; they are conspicuous, mention "merchantability" and "fitness for a particular purpose," and contain language sufficiently broad to exclude all other warranties, express or implied. Ind. Code Ann. § 26-1-2-316(2). Alpha has not claimed repudiation or bad faith by Roche, unconscionability in the Master Agreement itself, or that the warranty provisions controlling Alpha's remedies have "failed of their essential purpose." Absent facts that would support any such claim—and none have been alleged or argued—the Court concludes that the warranty provisions are enforceable and operate to limit Alpha's damages as specified.

Parties are held to the exclusive remedies set forth in their contracts. *See Stepan Co. v. Winter Panel Corp.*, 948 F. Supp. 802, 807, n. 2, 809-10. The actual and consequential damages Alpha seeks in each of its nine counts are therefore unavailable as a matter of law. *Id.* (finding that contractual limitation of remedies provisions broadly barring any incidental or consequential damages extinguish not only claims for breach of contract and breach of warranty, but also "any potential tort liability"); *see also 188 LLC v. Trinity Indus., Inc.*, No 00 C 7993, 2001 WL 506891, at *2 (N.D. Ill. May 14, 2001) (dismissing multi-count complaint where plaintiff sought no remedies available under the parties' contract). Accordingly,

9

these categories of damages could not, even if supported by competent proof, form the basis of this Court's diversity jurisdiction.

In summary, (1) Alpha has failed to garner competent proof that the amount in controversy exceeds $75,000, and (2) even if it had, the Master Agreement bars recovery of the incidental and consequential damages Alpha seeks in this suit. On the basis of the current record, then, the amount in controversy is insufficient to confer jurisdiction on this Court.[7]

**Conclusion**

Plaintiff has until November 4, 2015 to file an amended complaint sufficiently alleging a basis for federal jurisdiction and otherwise in accordance with this Opinion and Order. Failure to do so will result in dismissal of the complaint for failure to properly allege subject matter jurisdiction.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 14, 2015

---

[7] Because this Court lacks jurisdiction, it will not address Roche's argument that Alpha has failed to state a claim upon which relief can be granted. R. 11 at 5-13. Similarly, the Court does not reach the merits of Roche's Motion to Strike Jury Demand. R. 12.